UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| EVA M. GREEN Individually and on behalf of all other similarly situated., | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) |
| MONARCH RECOVERY MANAGEMENT, INC. a Pennsylvania corporation, DHC CONSULTING SERVICES, LLC a Maryland limited liability company, INTERIM CAPITAL GROUP, INC. an Indiana Corporation (Added per Amended Complaint of 5/23/13.), | ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

No. 1:13-cv-00418-SEB-MJD

**ORDER ON PLAINTIFFS' MOTION TO COMPEL**

This matter comes before the Court on Eva M. Green's ("Plaintiff") Motion to Compel Defendants to Comply with Discovery Obligations, filed on February 3, 2014. [Dkt. 74.] For the following reasons, the Court hereby **GRANTS IN PART** and **DENIES IN PART** the Plaintiff's motion to compel.

**I. Background**

This matter involves claims brought by Eva M. Green ("Plaintiff") alleging violations of the Fair Debt Collection Practices Act ("FDCPA"). [Dkt. 1 at 1.] When Plaintiff fell behind on her credit card payments in 2005, CACH LLC and its lawyer debt collector made efforts to collect on her debt. [*Id.* at 3.] Because of their collection efforts, Plaintiff brought an FDCPA case alleging misconduct, which settled in 2006. [*Id.*] At some point after the 2006 settlement, Defendant DHC Consulting Services ("DHC") purchased or obtained Plaintiff's same alleged

1

debt, and Defendant Monarch Recovery Management ("Monarch") directly sent Plaintiff, not her attorney on the matter, a collection letter on February 8, 2013. [*Id.* at 4.]

In response to Defendant Monarch's letter, Plaintiff filed claims on March 13, 2013 against Defendants Monarch and DHC for three counts of FDCPA violations [Dkt. 1 at 4-6], which were amended on May 23, 2013 to include class action allegations and to add Interim Capital Group, Inc. ("Interim") as a Defendant [Dkt. 22 at 1, 7-8]. Plaintiff then served her discovery requests on May 31, 2013, to which requests Defendants did not respond until November 1, 2013. [Dkt. 74 at 2.] On January 16, 2014, after multiple discovery conferences, Defendant Monarch supplemented its response regarding its Bona Fide Error defense, referencing an Excel spreadsheet.[1] [Dkt. 74 at 3.] Plaintiff was not satisfied with Defendants' responses and filed their Motion to Compel Defendants to Comply with Discovery Obligations on February 3, 2014. [*Id.*] Oral argument was held on March 10, 2014, and the Court now considers Plaintiff's motion to compel.

## II. Discussion

Rule 37 permits a party to file a motion to compel a required disclosure upon "evasive or incomplete disclosure, answer, or response." Fed. R. Civ. P. 37(a). A required disclosure, as defined by Rule 26, includes information that a party "may use to support its claims [or defenses]." Fed. R. Civ. P. 26 (a)(1)(A). When there is good cause, "the court may order discovery of any matter **relevant**" to the issues of the case. Fed. R. Civ. P. 26 (b)(1) (emphasis added). However, information that is not relevant to a claim or defense is not discoverable. *Id.* This Court has "broad discretion in discovery matters," including the consideration of a motion to compel discovery. *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 646 (7th Cir. 2001)

---

[1] A portion of the spreadsheet in question was eventually produced on February 20, 2014, after Plaintiff had already filed her motion to compel, in redacted PDF format. [Dkt. 78 at 3.]

2

(citing *Kalis v. Colgate-Palmolive Co.*, 231 F.3d 1049, 1056 (7th Cir. 2000)).  Plaintiff alleges several deficiencies regarding Defendants' responses to Plaintiff's discovery requests, and the Court will address such allegations herein.

### A. Bona Fide Error Discovery

In defense of Plaintiff's allegations against them, Defendants Monarch and Interim both raise a bona fide error affirmative defense, pursuant to the FDCPA [Dkt. 74 at 2], which requires that the violation "(1) was unintentional, (2) resulted from a bona fide error, and (3) occurred despite the debt collector's maintenance of procedures reasonably adapted to avoid such error," *Ruth v. Triumph Partnerships*, 577 F.3d 790, 803 (7th Cir. 2009).  Accordingly, Plaintiff addressed this defense in her Request for Production (RFP) 16 by requesting each Defendant to produce "[a]ll documents that refer to or support or diminish any affirmative defense [it] assert[s]" and in her Interrogatory 17 by asking each Defendant to "[s]tate the factual basis for any affirmative defense [it] assert[s] and identify all persons, by name, last known address, and telephone number, with knowledge of these facts."  [*Id.* at 2-3.]

In response, Defendant Monarch eventually provided the Plaintiff with supplemental interrogatory responses.  [*See* Dkt. 78 at 1.]  The supplemented interrogatory responses state, in relevant part, that:

> [Interrogatory 16 Answer] Monarch received a placement file from DHC Consulting Services, Inc. (DHC).  DHC assigns accounts to Monarch electronically by sending Monarch an excel spreadsheet that includes a mixture of portfolios and a mixture of account owners in one excel spreadsheet.  Some of the accounts are directly owned by DHC and some are not directly owned by DHC.  All of the accounts are assigned to Monarch for collection by DHC.  One of the columns in the spreadsheet gives the Owner information.  In February [of 2013], Monarch received a spreadsheet of accounts and some accounts were owned by DHC, some accounts were owned by Interim, and some accounts were owned by entities not parties to this litigation.

> **During the process of loading the accounts to our system, a step in the instructions was missed and the accounts were loaded to the wrong DHC client number**, which showed DHC Consulting Services, LLC as the creditor. By not separating out the Interim accounts, those accounts were loaded with the other DHC owned accounts. . . .
>
> [Interrogatory 17 Answer] For affirmative defense 1, defendant states that it has procedures in place to identify the proper creditor on all mailings. Defendant received a referral of accounts from DHC. **Those accounts were incorrectly input into Monarch's system as owned by "DHC Consulting Services, LLC."** Monarch has reasonable procedures in place to ensure the proper creditor is identified. See response to interrogatory number 16. All letters incorrectly identifying DHC as the creditor were part of the same batch of letters, sent to Monarch's letter vender on the same date, and thus the result of a single, isolated incident.

[Dkt. 78-1 at 3-4 (emphasis added).] Defendant Monarch then, the same day that Defendants' response to Plaintiff's motion to compel was filed, provided the Plaintiff with a PDF version of the referenced spreadsheet, pursuant to Plaintiff's RFP 16. [Dkt. 78 at 3-4.] The PDF was over one thousand pages long when printed, only fifty pages of which were not redacted. [Dkt. 80 at 3.] Even Plaintiff's information was redacted from the produced PDF. [*Id.*]

Plaintiff argues that the PDF provided does not sufficiently represent the original spreadsheet, does not help identify a procedure "reasonably adapted to avoid" erroneous debt collection practices, and does not clearly demonstrate that the pages provided are from one spreadsheet that was the one sent to Defendant Monarch by Defendant DHC. [*Id.*] Accordingly, Plaintiff requests that the unredacted spreadsheet must be produced "so the Plaintiff can assess exactly how the data was mixed." [*Id.*] At the hearing on Plaintiff's motion, Defendants admitted that the spreadsheet is relevant to their defense, but argued that an unredacted version of the spreadsheet would unnecessarily provide the Plaintiff with the names, addresses, and social security numbers of 2,400 people, only about one hundred of which are likely relevant to the matter before the Court.

Rule 34(b) requires a party to produce electronically-stored documents "as they are kept in the usual course of business," and, if no other form is specified in the request, to produce the document "in a form or forms in which it is ordinarily maintained or in a reasonably usable for or forms." Fed. R. Civ. P. 34(b)(2)(E). The parties subsequently agreed to produce electronically stored material in either paper or PDF format. [Dkt. 26 at 1.] However, that agreement is subject to modification when production in the agreed format materially alters the usefulness or evidentiary value of the document at issue. Here, the document that was sent to Defendant Monarch by Defendant DHC in the usual course of business as an Excel spreadsheet must be produced in its native Excel format. One of the unique strengths of Excel software is the ability to implement calculations and formulae that are not evident in a PDF version, so merely a PDF imprint of the surface information is not sufficient. Further, the ability to search the spreadsheet is essential to its usefulness. Additionally, due to its structure, a printed or PDF version of a large Excel spreadsheet is often useless from an evidentiary standpoint.[2]

While Defendants are hesitant to produce the private information of the 2400 people listed in the spreadsheet in question, the Court notes that the parties' Agreed Protective Order for Documents Produced by Defendants protects any information produced as "Confidential Information," including the "privacy interest in sources of information that have not been released to the public." [Dkt. 62.] Therefore, as discussed at the hearing on Plaintiff's motion to compel, Defendant Monarch is ordered to produce the entire unredacted spreadsheet in question

---

[2] A standard printer in the United States is configured for Letter-sized paper, typically producing a printout as wide as 8.5 inches, or 11 inches if the document is printed on the "landscape" setting. Meanwhile, the rows and columns of an Excel spreadsheet often extend far beyond the limits of Letter-sized paper, especially when the spreadsheet contains the personal and financial information of thousands of people, as does the spreadsheet at issue in this matter. A traditional printout of such a large Excel spreadsheet would span thousands of pages, a grid multiple pages wide by multiple pages long, and to read the entirety of one row or one column would require the reader to scan through hundreds of pages at a time, which pages may not even be printed consecutively. Such a printout would simply not be reasonably manageable as compared to the native format of the spreadsheet.

in its native format, an Excel spreadsheet, as "Confidential Information" pursuant to the governing protective order. Additionally, Plaintiff has indicated that, while Defendant Monarch has supplemented its Interrogatory answers to detail its bona fide error defense and produced the PDF as discussed above, Defendant Interim has not done the same. [Dkt. 74 at 3.] To the extent that Defendant Interim intends to rely on any information not disclosed in its first responses to Plaintiff's written discovery requests to support its bona fide error defense, the Court orders Defendant Interim to so supplement its responses to Plaintiff's written discovery requests. Thus, Defendants Monarch and Interim's objections to Plaintiff's RFP 16 and Interrogatory 17 are overruled, and Plaintiff's motion to compel is **granted** with regard to the bona fide error discovery.

> **B.** **Account Histories**

In light of the parties' agreed protective order, Plaintiff also requests that the Defendants be ordered to produce the account histories of the putative class members. [Dkt. 74 at 5.] Defendants object to the production of such information "until such time as the class action has been certified," arguing that any information regarding the putative class members lies outside of the scope of discovery until the class is certified by the Court. [Dkt. 78 at 4.] In reply, Plaintiff asserts that she is entitled to discovery relating to the putative class members before certification in order to evaluate the merits of the class action claims and to contact potential witnesses to the matter before the Court. [Dkt. 80 at 4.]

It is important to note that "there is a strong public policy in favor of disclosure of relevant materials." *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002). Any information that is "reasonably calculated to lead to the discovery of admissible evidence" lies within the scope of discoverable materials. Fed. R. Civ. P. 26(b)(1); *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 352 (1978). Though a discovery request may extend to a putative class

that has not yet been certified, such a request is not outside the scope of discovery merely because the class action is not yet certified. *See Cox v. Sherman Capital LLC*, 1:12-CV-01654-TWP, 2014 WL 712659 (S.D. Ind. Feb. 24, 2014) (ordering production of materials pertaining to a putative class after finding that the plaintiffs' request for production of information pertaining to a putative class was not overbroad or unduly burdensome); *Wiginton v. Ellis*, 02 C 6832, 2003 WL 22232907 (N.D. Ill. Sept. 16, 2003) (ordering the defendant to produce a list of all its current and former female employees before the class was certified).

At oral argument, Defendants conceded that the production of the requested account histories would not be burdensome, limiting their argument to the theory that information regarding a putative class is not relevant until that class is certified. However, Defendants have presented no case law to support this assertion, while courts in cases such as *Cox* and *Wiginton* have found that putative class information lies within the scope of discovery even before a court has certified the class action. Thus, Defendants' sole objection—that the account histories of the putative class are outside of the scope of discovery—is overruled, and the Court **grants** Plaintiff's motion to compel with regard to the account histories requested.

C.     **Depositions**

Plaintiff's final request is for the Court to order the Defendants to "co-operate in the scheduling of depositions in this matter." [Dkt. 74 at 6-7.] At the hearing on Plaintiff's motion to compel, it became apparent that a significant part of the rift between the parties concerns whether the Defendants should be deposed in-person or telephonically. Defendants' counsel opined that telephonic depositions should be sufficient, while Plaintiff's counsel expressed a preference to take the depositions in-person. The solution here is simple—Plaintiff's counsel may conduct the depositions in person, and Defendants' counsel may defend the depositions telephonically. Although the Defendants may feel that an in-person deposition is not necessary,

the Plaintiff is the master of her case, and she may, at her own cost and burden, conduct her discovery as she sees fit. *See Oneida Tribe of Indians of Wisconsin v. Vill. of Hobart*, 10-C-137, 2010 WL 4363324 (E.D. Wis. Oct. 28, 2010) ("The plaintiff, after all, is the master of his case").

Further, and regardless of which party cancelled which deposition for which reason with which party's lack of cooperation, a motion to compel is not the proper recourse for such quibbling over an alleged failure to cooperate. Local Rule 30-1(d), which governs the scheduling of depositions, clearly states that "attorneys will make a good faith effort to schedule depositions in a manner that avoids scheduling conflicts," and, unless otherwise stipulated or ordered, "no deposition will be scheduled on less than 14 days [sic] notice." To be painstakingly clear, Plaintiff's counsel, if they have not done so already, shall e-mail Defendants' counsel with proposed dates for depositions and follow-up such an e-mail with a phone call within a few days after that e-mail is sent. If Plaintiff's counsel does not receive a response from either overture, then Plaintiff's counsel may schedule the depositions at their convenience, giving proper notice to Defendants' counsel, no less than fourteen days in advance of the scheduled depositions, pursuant to Local Rule 30-1. In the event that Defendants' counsel feels that any deposition scheduled by Plaintiff's counsel is unreasonable, Defendants may then move for the Court to quash the depositions. Because these steps have not yet been taken, the Court **denies** Plaintiff's motion to compel with regard to her request to order Defendants' cooperation with the scheduling of depositions.

### III. Conclusion

For the aforementioned reasons, the Court hereby **GRANTS IN PART** and **DENIES IN PART** Plaintiff's Motion To Compel Defendants to Comply with Discovery Obligations. [Dkt. 74.] The Court grants the Defendants twenty-one (21) days from the date of this Order to

supplement its responses to Plaintiff's interrogatories and requests for production in a manner consistent with this Order.

Date: 04/24/2014

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Steven James Halbert
shalbertlaw@aol.com

Paul Gamboa
GORDON & REES LLP
pgamboa@gordonrees.com

Craig J. Mariam
GORDON & REES, LLP
cmariam@gordonrees.com

Ryan T. Brown
GORDON & REES, LLP
rtbrown@gordonrees.com

Nicholas Ward Levi
KIGHTLINGER & GRAY
nlevi@k-glaw.com

Peter A. Velde
KIGHTLINGER & GRAY
pvelde@k-glaw.com

David J. Philipps
PHILIPPS & PHILIPPS LTD
davephilipps@aol.com

Mary E. Philipps
PHILIPPS & PHILIPPS, LTD
mephilipps@aol.com

Angie K. Robertson

PHILIPPS AND PHLIPPS, LTD.
angiekrobertson@aol.com