IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| Eva M. Green, individually and on behalf of all other similarly situated | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No. 1:13-cv-418-SEB-MJD ) |
| Monarch Recovery Management, Inc., a Pennsylvania corporation, | ) ) ) |
| Defendant. | ) |

**PLAINTIFF'S MEMORANDUM IN
SUPPORT OF HER MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Eva M. Green ("Green"), individually and on behalf of all others similarly situated[1], hereby moves this Court for Summary Judgment, pursuant to Fed.R.Civ.P. Rule 56, as to Defendant's liability under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. ("FDCPA"), and in support thereof, states:

**INTRODUCTION**

Ms. Green's Amended Complaint – Class Action[2] alleges that Defendant violated §1692g(a)(2) of the FDCPA as to Ms. Green and the putative class by failing to state the name of the current creditor to whom the debt was owed (Dkt. 22 at ¶¶ 18-21); violated §1692e of the FDCPA by falsely stating the name of the current creditor ( Dkt.

---

[1] Plaintiff's Motion for Class Certification (Dkt. 48) was recently denied (Dkt. 117), but on September 26, 2014, Plaintiff timely filed a Motion to Reconsider (Dkt. 119). Therefore, in her Summary Judgment Motion and Memorandum, Plaintiff addresses both the individual and class claims brought in her Amended Complaint—Class Action.

[2] DHC Consulting Services ("DHC") and Interim Capital Group ("Interim") were recently dismissed, without prejudice, as Defendants in this lawsuit after completion of discovery and, in part, because  neither party had sufficient net worth to incease recovery for the putative class.  (Dkt 115, 116).

22 at ¶¶ 22-25); and violated § 1692e(5) of the FDCPA by attempting to collect debts which were time-barred under the statute of limitations and, thus, took an action it could not legally take  (Dkt. 22 at ¶¶26-30).  Moreover, Defendant Monarch violated §1692c(a)(2) of the FDCPA as to Ms. Green individually by communicating directly with a consumer who Monarch knew, or should have known, was represented by counsel (Dkt. 22 at ¶¶ 31-34).  A copy of the Monarch's February 8, 2013 collection letter at issue is attached hereto as Exhibit A, see also, Dkt. 22 at p. 20.

Defendant's letter clearly and unequivocally violates §1692g(a)(2), §1692e, §1692e(5) as to Ms. Green and the putative class, and violates §1692c(a)(2) of the FDCPA at to Ms. Green.  In its Answer to the Complaint, Defendant Monarch raised a defense of bona fide error – but plead absolutely no facts in support of this defense. (Dkt. 57, p. 20).  Moreover, discovery has shown that, in fact, Monarch maintained no procedures which, reasonably adapted, would prevent the multiple FDCPA violations contained in the letter sent to Ms. Green.  Therefore, summary judgment is appropriate for all counts of Plaintiff's Complaint—Class Action.

## STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

1. This Court has jurisdiction pursuant to § 1692k(d) of the FDCPA, and 28 U.S.C. § 1331.  (15 U.S.C. 1692k(d); 28 U.S.C. § 1331; Dkt. 22 at p. 12, Ex. A; , Eva Green Dep. Trans. excerpt, attached as Exhibit B at p. 7, ln. 20 to p. 8, ln. 15).

2. Venue is proper in this District because the acts and transactions occurred here, Plaintiff resides here and Defendant resides and transacts business here.  (Dkt. 22 at pp. 12-14, 20; Ex. A; Ex. B at p. 7, ln. 20 to p. 8, ln. 15).

3. Defendant, Monarch Recovery Management, Inc. ("Monarch"), is a

Pennsylvania corporation that acts as a debt collector, as defined by § 1692a of the FDCPA, because it regularly uses the mails and/or telephone to collect, or attempt to collect, delinquent consumer debts, including delinquent consumer debts in the Southern District of Indiana. (Dkt. 22 at pp. 12, 14-15, 20).

4. Defendant Monarch is licensed as a debt collection agency in the State of Indiana and acts as a collection agency in Indiana. (Dkt. 22 at p. 12; see also, Ex. A).

5. In 2005, Ms. Green fell behind on paying her bills due to her husband's illness, including a debt she allegedly owed to Bank One. (Ex. B, p. 37, ln. 10 to p. 40, ln. 20).

6. At some point after that debt became delinquent, another bad debt buyer, CACH, bought Ms. Green's alleged debt from Bank One and placed that debt for collection with an attorney, The Law Office of Sam Streeter ("Streeter"); on January 19, 2006, one of Ms. Green's attorneys faxed a letter that informed CACH and its lawyer that Ms. Green was represented by counsel and that all future communications regarding the Bank One debt must go through his office. (Dkt. 22, pp. 18-19). On March 15, 2006, Ms. Green sued Streeter regarding its misconduct in the collection of the Bank One debt, see, Green v. The Law Office Of Sam Streeter, No. 1:06-cv-435-JDT-TAB (S.D. Ind.).

7. Some time thereafter, Ms. Green's Bank One debt was apparently sold/transferred to Interim Capital Group ("Interim"), which knew, long before Monarch sent its collection letter, that she was represented by counsel, see, Excerpt of Karl Ryan Dep.Trans., attached as Exhibit C at p. 26, ln. 6 to p. 27, ln. 24.

8. Nonetheless, Monarch sent Ms. Green an initial form debt collection

3

letter, dated February 8, 2013, attempting to collect a debt originally owed to Bank One, which set forth that DHC Consulting Services ("DHC") was the "Creditor", and stated that DHC had transferred the account to Monarch's office for collection.  (Dkt. 22 at p. 20; Ex. A).

9. The creditor to whom the Bank One debt was then owed was, in fact, Interim.  (Dkt. 55 at ¶ 15).

10. Interim is not mentioned anywhere in Defendant's letter.  (Dkt. 22 at p. 20; Ex. A).

11. On February 28, 2014, Defendant Monarch called Ms. Green in an attempt to collect the Bank One debt and spoke to her husband, who requested that Monarch call back after Ms. Green returned home from work.  When Ms. Green returned from work, she contacted Defendant Monarch and demanded that it cease contacting her, and directed it to contact her attorney, Steven Halbert, see, Ex. B, p. 24, lns. 14 to p. 32, ln. 9; see also, copies of the transcripts of Monarch's calls with Mr. and Ms. Green, attached as Group Exhibit D.

12. Defendant Monarch produced a single line from a spreadsheet it maintained, which contained notes about Ms. Green's account, including a last date of payment for Ms. Green's account of May 3, 2005 - more than seven years prior to its February 8, 2013 collection letter, see attached Exhibit. E.

13. Defendant Monarch testified that DHC assigned accounts to Monarch by sending, via email, a spreadsheet containing a mixture of a multitude of debt buyers, and that some accounts on the spreadsheet were owned by DHC, some accounts were owned by Interim, and some accounts were owned by other debt buyers; during the

4

process of loading the accounts into Monarch's system, some steps were allegedly missed and, as a result, all 2,500 accounts were loaded into Monarch's collection system as though they were owned by DHC, see, Defendant Monarch's Supplemental Answers to Plaintiff's Interrogatories, attached as Exhibit F at pp. 3-4;  both Monarch and DHC testified that DHC could have created separate spreadsheets for each debt buyer instead of sending Monarch a mixture of many different debt buyers, see, Diane Mazzacano Dep. Trans excerpts, attached as Exhibit G. at p. 80, ln. 8 to p. 81, ln. 9; see also, excerpt from DHC Owner Dawn Horst Dep. Trans., attached as Exhibit H, p. 24, ln. 15 to p. 25, ln. 7.

14. Diane Mazzacano, Monarch's Chief Administrative Officer, testified that she personally made multiple errors in loading the DHC spreadsheet into Monarch's system, because she missed two steps in the DHC Loading Placements instructions, see, Ex. G, at p. 76, ln. 1 to p. 77, ln. 8; p. 91, ln.18 to p. 92, ln. 2; p. 118, lns. 12-17; see also, Exhibit F at pp. 7-8.

15. Ms. Mazzacano asserted that she failed to "sort" a column on the spreadsheet and to create separate sheets saved as file names for each creditor and, instead, had saved the entire spreadsheet with a file name indicating that DHC was the creditor, which is how it was then loaded into Monarch's system, see, Ex. G, at p. 76, lns. 1-24; p. 91, lns. 18-24; p. 92, lns. 1-2; p. 104, ln. 8 to p. 105, ln. 4.

16. Ms. Mazzacano testified that some of the 2,500 accounts on the spreadsheet at issue were owned by DHC and some were owned by other debt buyers, see, Ex. G, at p. 50, lns. 17-24, p. 75, lns. 18-24.

17. When asked whether she was the individual typically responsible for

loading such placements into the system, Ms. Mazzacano indicated that she was not, see, Ex. G, at p. 76, lns. 17 to p. 77, ln. 22.

18. Ms. Mazzacano indicated that, in Monarch's process for loading spreadsheets into its system for collection, no other precautions were taken to safeguard against errors ( Ex. G, at p. 83, lns. 16-24) and no one else at Monarch proofed her work (Ex. G, at p. 92, lns. 3-8).

19. Ms. Mazzacano testified that Monarch's audit procedure takes a random sampling of all of the letters sent by Monarch, which are generated by a third-party vendor, only *after* they have already been sent –about 30 days thereafter, see, Ex. G, at p. 31, lns. 3 -16; p. 52, lns. 8-24; p. 84, lns 1-14.  Moreover, this audit process only checks the generated letters against the information that has already been entered by Monarch into its system and, therefore, was not designed to, nor would it have effectively identified and avoided the particular errors that occurred here, see, Ex. G, at p. 33, ln. 24, to p. 35, ln 8.

20. In fact, Monarch did not learn of the error, until it was served with Ms. Green's present lawsuit; moreover, Monarch never took any action to inform the putative class of its error, see, Exhibit G, p. 82, lns. 13-23.

21. According to DHC, Ms. Mazzacano also missed a third step in the account loading process, because DHC did not own *any* of the mixture of the 2,500 accounts that had been sent on the spreadsheet; in fact, the "DHC" in the column at issue on the spreadsheet was not the name of the current creditor, but, rather, a letter code that represented the owner "Accession Services, LLC", see, Ex. H. at p. 16, lns. 4-13. DHC

provided a key to decipher the letter codes and Ms. Mazzacano, therefore, missed this step as well, see, Ex. H at p. 16, lns. 16-25.

22.     Moreover, according to the account notes produced by Defendant for the putative class, of the Indiana accounts in the portfolio, 83 out of 112 were beyond the Indiana six-year statute of limitations for collection.  A chart of data abstracted from Monarch records organized by date of last payment is attached as Exhibit I.

23.     Ms. Mazzacano testified that Monarch used a nationwide statute of limitations matrix in its collection practice to safeguard against collecting on time-barred debt, see, Ex. G, at p. 25, lns 1-9.

24.      Ms. Mazzacano testified that most of the accounts in the spreadsheet at issue for the putative class members were 7-8 years old and, despite this fact, the collection letter sent to the putative class did not state that the statute of limitations had run, see, Ex. G, at p. 24, lns. 7-24; p. 47, lns 7-13; p. 48, lns. 1-5; see also, Ex. A.

25.     Defendant Monarch produced a "Nationwide Statute of Limitations Matrix", which incorrectly identified that the statute of limitations for Indiana as 10 years; the statute of limitations in Indiana for collecting delinquent credit card debts, pursuant to Indiana Code § 34-11-2-7(1), is six years from the date of the last activity, see, Smither v. Asset Acceptance, LLC, 919 N.E.2d 1153, 1158 (Ind. Ct. App. 2010); in her continued deposition, Ms. Mazzacano testified that she had compiled the information in the Nationwide Statute of Limitations Matrix herself, but had not learned until the day of her deposition that the information for the state of Indiana, as well as several other states, was incorrect, and that, in fact, the matrix had *never* been used in practice by Monarch

to determine whether or not a debt was beyond the applicable statute of limitations, see, Ex. G, at p. 118, ln. 24 to p. 120, ln. 22.

26. Defendant Monarch has never pled a single fact in support of its alleged affirmative defense of bona fide error. (Dkt. 55 at p. 20, ¶ 1).

## ARGUMENT

Summary judgment is the "put up or shut up moment" in a case, at which the moving party is required to marshal and present the court with the evidence it contends will prove its case, see, Porter v. City of Chicago, 700 F.3d 944, 956 (7th Cir. 2012); Goodman v. National Security Agency, Inc., 621 F.3d 651, 654 (7th Cir. 2010). Summary judgment should be granted if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law, see, Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91L.Ed.2d 265 (1986); Anderson v. Donahoe, 699 F.3d 989, 994 (7th Cir. 2012); see also, Fed.R. Civ.P. Rule 56.

Once the moving party meets this burden, the non-movant must come forward with specific facts supported by affidavits or other appropriate evidence establishing a genuine issue for trial, see, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The non-moving party may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; rather, the nonmovant must go beyond the pleadings to support his or her contentions with properly admissible evidence, see, Celotex, 477 U.S. at 322-323; Humes v. Blatt, Hasenmiller, Liebsker & Moore, LLC, 2007 U.S. Dist. LEXIS 72344 at [*4] (S.D. Ind. 2007)(Barker, J.). Summary judgment is particularly appropriate when the language of

8

a document or contract is at issue.  Humes, 2007 U.S. Dist. LEXIS 72344 at [*5], citing, Ooley v. Schwitzer Div., Household Mfg., 961 F.2d 1293, 1298 (7th Cir. 1992).

Defendant's letter clearly does not state the name of the creditor to whom the debt is currently owed, in violation of § 1692g(a)(2) of the FDCPA, and falsely states that the creditor is DHC, in violation of § 1692e of the FDCPA.  (SMF ¶¶ 8-10).  Moreover, Defendant Monarch took an action it could not legally take by attempting to collect a time-barred debt, in violation of §1692e(5) of the FDPCA.  (SMF ¶¶ 12, 22-25).  Finally, Defendant contacted Ms. Green in an attempt to collect the Bank One debt when it knew, or should have known, she was represented by counsel as to this debt, in violation of §1692c(a)(2) of the FDPCA.  (SMF ¶¶ 6-8).  Defendant's collection actions clearly and unequivocally violated the FDCPA, and its violations are not excused by the FDCPA's bona fide error defense, see, 15 U.S.C. §1692k(c).

**I.      By Stating, In Its Form Debt Collection Letter, That DHC Was The Creditor, And By Failing to Identify The Actual Creditor, Defendant Monarch Violated The FDCPA**

The FDCPA provides consumers with important rights to protect them from "unfair, harassing and deceptive debt collection practices."  (See, S. Rep. No. 382 95th Cong. 1st Sess., 1-2 (1977), reprinted in U.S.C.C.A.N. 1696).  To that end, § 1692g(a) requires that a debt collector, within five days of its first communication with a consumer, provide the consumer with a written notice containing, among other information, "(2) the name of the creditor to whom the debt is owed;", see, 15 U.S.C. § 1692g(a)(2).  Moreover, § 1692e of the FDCPA prohibits a debt collector generally from using any false, deceptive or misleading representation or means in connection with the collection of a debt, see, 15 U.S.C. § 1692e.  Thus, debt collectors, such as Defendant

Monarch, are under an affirmative duty to state the name of the creditor to whom the debt is owed, and to refrain from using any debt collection letters containing false statements.

Moreover, the statements in Defendant's form debt collection letters are to be viewed through the eyes of the "unsophisticated consumer" - an objective standard, see, Gammon v. GC Services Ltd. Partnership, 27 F.3d 1254, 1257 (7th Cir. 1994); Lox v. CDA , Ltd., 689 F.3d 818, 826 (7th Cir. 2012)(the unsophisticated consumer test is an objective one, meaning that it is unimportant whether the individual that actually received a violative letter was misled or deceived).

Defendant sent Ms. Green an initial form debt collection letter, dated February 8, 2013, attempting to collect a debt originally owed to Bank One, which wrongly set forth that DHC was the "Creditor", and stated that DHC had transferred the account to Defendant Monarch's office for collection. (SMF at ¶ 8). In fact, at the time Defendant sent the letter to Ms. Green, the actual owner of the debt was Interim, not DHC; DHC never owned the debt. (SMF at ¶ 9, 21). Interim, however, is not mentioned anywhere in Defendant's letter. (SMF at ¶ 10).

The name of the creditor to whom the debt is owed is clearly an important piece of information, i.e., it is "material", which debt collectors, such as Defendant, are required to give consumers - so much so that the FDCPA mandates that debt collectors provide this information to consumers in writing. Failing to identify adequately the name of the creditor to whom the debt is owed violates the FDCPA, see e.g., Braatz v. Leading Edge Recovery Solutions, 2011 U.S. Dist. LEXIS 123118 at [*2]-[*4] (N.D. Ill. 2011); Walls v. United Collection Bureau, 2012 U.S. Dist. LEXIS 68079 at [*5]-[*6](N.D.

Ill. 2012); and <u>Deschaine v. National Enterprise Systems</u>, 2013 U.S.Dist. LEXIS 31349 (N.D. Ill. 2013)(<u>Braatz</u>, <u>Walls</u> and <u>Deschaine</u> are attached as Group Exhibit <u>J</u>).  Indeed, as Judge Grady noted in <u>Walls</u>:

> We reject defendants' contention . . . that what plaintiff is complaining of is "immaterial" information.  The statue expressly requires identification of the creditor to whom the debt is owed; when that information is present in an arguably confusing manner, it could influence the consumer's decision.  For example, it could cause an unsophisticated consumer to be concerned about the possibility of being defrauded or about paying the incorrect creditor and continuing to have outstanding debt.

<u>Walls</u>, 2012 U.S.Dist. LEXIS 68079 at [*5]-[*6]; <u>see</u> <u>also</u>, <u>Bourff v. Rubin Lublin, LLC</u>, 674 F.3d 1238, 1241 (11th Cir. 2012)("The identity of the creditor in these matters is a serious matter.").

Defendant's form debt collection letter utterly fails to identify the name of the creditor to whom the debt is owed – Interim is not mentioned at all in the letter (SMF at ¶¶ 9-11; Ex. <u>A</u>).  Moreover, the letter affirmatively misidentifies the creditor as DHC. (SMF at ¶¶ 9-11; Ex. <u>A</u>).  Thus, Defendant has violated §1692g(a)(2) of the FDCPA by failing to state the name of the current creditor to whom the debt was owed, and violated §1692e of the FDCPA by falsely stating the name of the current creditor.

Defendant Monarch claims that any violations of the FDCPA were the result of a bona fide error, and that it should thus be shielded from liability for its violations of the FDCPA, <u>see</u>, 15 U.S.C. § 1692k(c).  (Dkt. 55 at p. 20, ¶ 1).  Monarch, however, has not pled its affirmative defense of <u>bona</u> <u>fide</u> error with the specificity required of pleadings and affirmative defenses, <u>see</u>, Fed. R. Civ. Pro Rule 8(a), Fed. R. Civ. Pro Rule 9(b), "affirmative defenses involving fraud or mistake must state with 'particularity' the circumstances constituting the fraud or mistake"; <u>Bobbitt v. Victorian House, Inc.</u>, 532 F.

11

Supp. 734, 736-737 (N.D. Ill. 1982); Mussat v. Power Liens, 2014 U.S. Dist. LEXIS 141561 (N.D. Ill. Oct. 6, 2014); see also, Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-56 (2007). Due to its failure to plead any facts, Monarch should be barred from asserting this affirmative defense.

Moreover, Monarch's attempted reliance on the bona fide error defense to excuse its multiple missteps in misidentifying the creditor to whom the debt was owed is unsupported by the evidence. A debt collector relying on the bona fide error defense thus must show that the violation: (1) was unintentional, (2) resulted from a bona fide error, and (3) occurred despite the debt collector's maintenance of procedures reasonably adapted to avoid such error, see, Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich, 559 U.S. 573, 578 (2010) Kort v. Diversified Collection Services., Inc., 394 F.3d 530, 537 (7th Cir. 2005); Jenkins v. Heintz, 124 F.3d 824, 834 (7th Cir. 1997); see also, 15 U.S.C. §1692k(c). To date, Defendant has not described any set of procedures reasonably adopted to prevent the multiple errors it made which led to the misidentification of the creditor as "DHC" instead of "Interim", see, SMF ¶¶ 13-21. The only precautions taken by Monarch either verify different information, unrelated to the name of the creditor, or are re-active, rather that preventative (SMF ¶ 19). In fact, by failing to correct its error after the erroneous February 8, 2013 letter was sent, (SMF ¶ 20), Monarch ratified its errors.

Summary judgment as to Defendant's liability under the FDCPA as to Counts I and II of Plaintiff's Amended Complaint – Class Action should thus be granted.

**II.    By Attempting To Collect A Time-Barred Debt, Defendant Monarch Has Taken An Action It Cannot Legally Take In Violation of §1692e(5) Of The FDCPA.**

Defendant's February 8, 2013 letter unlawfully attempted to collect a debt from Ms. Green which was clearly time-barred. (SMF ¶¶ 12, 22-25). Moreover, at least 83 of the 112 putative class members' debts were also time-barred, see, Ex. I. For years, District Courts have told debt collectors that attempts to collect on time-barred debts are illegal and a violation of the FDCPA. Any doubt about the wisdom of these lower court decisions was eliminated in 2011 when the Ninth Circuit, with Justice Sandra Day O'Connor sitting by designation on the panel, issued its decision in McCollough v. Johnson, Rodenburg & Lauinger, 637 F.3d 939, 947-48 (9th Cir. 2011), finding that a debt collector's attempt to collect a time-barred debt unequivocally violated the FDCPA.[3] The Seventh Circuit likewise recently stated that a lawsuit filed to collect a debt after the statute of limitations has run violates the FDCPA, see, Phillips v. Asset Acceptance, LLC, 736 F.3d 1076, 1079 (7th Cir. 2013).

Indeed, in McMahon v. LVNV Funding, LLC, et al., 744 F.3d 1010 (7th Cir. March 11, 2014), the Seventh Circuit held that a collection letter sent to collect on a time-barred debt could, in fact, mislead an unsophisticated consumer about the character, amount or legal status of debt, and be the basis of a violation of § 1692e(5) of the FDCPA, regardless of whether litigation was threatened, see, McMahon, 744 F.3d at 1020-1021. Specifically, McMahon holds that a collection letter for a time-barred debt which makes a settlement offer, as Defendant's letter to Ms. Green and the putative

---

[3]   Similarly, in Gonzales v. Arrow Financial Services, 660 F.3d 1055 (9th Cir. 2011), the Ninth Circuit found that threatening to make a credit report of a delinquent debt which was past the time for credit reporting violated the FDCPA.

13

class does here (Ex. A), could mislead an unsophisticated consumer into believing that he or she may be lawfully sued for the debt., see, McMahon, 744 F.3d at 1021-1022.

The statute of limitations in Indiana for collecting delinquent credit card debts, pursuant to Indiana Code § 34-11-2-7(1), is six years from the date of the last activity, see, Smither v. Asset Acceptance, LLC, 919 N.E.2d 1153, 1158 (Ind. Ct. App. 2010); Ms. Green's debt was in default as of May, 2005 – nearly nine years earlier (SMF 12), and thus was clearly time-barred, as were the debts of 83 members of the putative class (Dkt. 22). Defendant Monarch, by attempting to collect debts from Ms. Green and the putative class which were clearly beyond the Indiana statute of limitations, took actions that it could not legally take, in clear violation of §1692e(5) of the FDPCA. Moreover, through its discovery responses and deposition testimony, Monarch has demonstrated that it maintained *no* procedures whatsoever that are reasonably adapted to avoid collection of time-barred debts, see, SMF ¶¶ 22-25, and thus is not entitled to the bona fide error defense on this claim. Therefore, summary judgment as to Count III of the Amended Complaint – Class Action should be granted in favor of Ms. Green and the putative class.

**III.    By Attempting To Collect A Debt From A Consumer It Knew Or Should Have Known Was Represented by Counsel, Defendant Monarch Has Violated §1692c(a)(2) of the FDCPA.**

Section 1692c(a)(2) of the FDPCA prohibits a debt collector from communicating with a consumer if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address. See, 15 U.S.C. § 1692c(a)(2). Courts have consistently held that attempts to collect debts directly from consumers when the collector knows

14

that the consumer is represented by counsel violate §1692c(a)(2) of the FDCPA, see Gburek v. Litton Loan Servicing LP, 614 F.3d 380, 386-387; see also, Zaborac v. Mutual Hosp. Serv., 2004 U.S. Dist. LEXIS 22816, at *[4-8] (S.D. Ind. Oct. 7, 2004)[4]; see also, Geiger v. Creditors Interchange, Inc., 59 Fed. Appx. 803, 804 (6th Cir. Ohio 2003).

Here, Interim, the creditor who owned Ms. Green's Bank One debt at the time Defendant Monarch sent its letter, knew that she was represented by counsel and, in fact, noted the name and contact information for her attorney in its collection notes, see, Exhibit C. (SMF ¶ 7). Furthermore, Ms. Green's prior lawsuit — a matter of public record — should have told Monarch that she was represented by counsel as to the alleged Bank One debt. (SMF ¶ 6). Monarch, therefore, knew or should have known that Ms. Green was represented by counsel when it communicated with her direction in attempt to collect her alleged Bank One debt, via letter on February 8, 2013, and phone call on February 28, 2013 (SMF at ¶ 11), and, thus, Defendant Monarch violated §1692c(a)(2) of the FDPCA.

Monarch has presented no evidence whatsoever demonstrating that it has any procedures or systems to check with its clients about attorney representation on debts it is collecting. All Monarch receives from its clients are blips of data, which allow it to collect debts from consumers without any other pertinent collection information – such as representation by counsel – and it does not require its clients to provide such information. This is particularly egregious in light of the fact that for consumers, this is a frustrating game of "telephone", where information and data can degrade as it passes

---

[4] Zaborac ultimately held that the collector's violation of §1692c(a)(2) of the FDPCA was subject to a bona fide error defense as to its "misunderstanding" or "misinterpretation" of the law. The United States Supreme Court, in Jerman, 559 U.S. 573, 594, later held that mistakes of law are not subject to the bona fide error defense.

through various hands – in this case from the creditor, to a debt buyer, CACH, which attempted to collect the debt through a law office, and then passed the data on to Interim, which tried to collect the debt itself, and then sent it on to DHC, which sent the data on to Monarch.

Defendant Monarch cannot plausibly prove that it maintained any procedures reasonably adapted to prevent contacts to consumers represented by counsel, such as Ms. Green. Summary judgment should be granted in her favor as to Count IV of her Complaint.

## CONCLUSION

Defendant's form debt collection letter violated § 1692g(a)(2) of the FDCPA because it failed to state the name of the creditor to whom the debt was owed, and violated § 1692e of the FDPCA because it falsely identified DHC as the creditor. Moreover, by attempting to collect debts that were barred by the statute of limitations, Defendant Monarch violated §1692e(5) of the FDPCA. Summary judgment should be granted in favor of Ms. Green and the putative class as to all counts of her Amended Complaint – Class Action.

                        Eva M. Green, individually and on behalf of all others similarly situated,

                        By: /s/ David J. Philipps_____
                        One of Plaintiff's Attorneys

Dated: October 10, 2014

David J. Philipps     (Ill. Bar No. 06196285)
Mary E. Philipps     (Ill. Bar No. 06197113)
Angie K. Robertson (Ill. Bar No. 06302858)
Philipps & Philipps, Ltd.
9760 South Roberts Road, Suite One
Palos Hills, Illinois 60465
(708) 974-2900
(708) 974-2907 (FAX)
davephilipps@aol.com
mephilipps@aol.com
angiekrobertson@aol.com

Steven J. Halbert    (Ind. Bar No. 14254-02)
11805 N. Pennsylvania Street
AmeriCenters Building
Carmel, Indiana 46032
(317) 706-6762
(317) 706-6763 (FAX)
Shalbertlaw@aol.com

## **CERTIFICATE OF SERVICE**

      I, David J. Philipps, an attorney, hereby certify that on October 10, 2014, a copy of the foregoing **Plaintiff's Memorandum In Support Of Her Motion For Summary Judgment** was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Paul Gamboa                    pgamboa@gordonrees.com
Gordon & Rees LLP
One North Franklin Street
Suite 800
Chicago, Illinois 60606


/s/ David J. Philipps
David J. Philipps    (Ill. Bar No. 06196285)
Philipps & Philipps, Ltd.
9760 S. Roberts Road
Suite One
Palos Hills, Illinois 60465
(708) 974-2900
(708) 974-2907 (FAX)
davephilipps@aol.com