UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| EVA M. GREEN Individually and on behalf of all other similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | 1:13-cv-00418-SEB-MJD |
| vs. | ) ) | |
| MONARCH RECOVERY MANAGEMENT, INC. a Pennsylvania corporation, | ) ) ) ) | |
| Defendant. | ) | |

**ORDER ON PENDING MOTIONS**

Plaintiff Eva Green brings this action against Defendant Monarch Recovery

Management, Inc. ("Monarch"), alleging various illegalities by Monarch: that it

improperly contacted her in an effort to collect a debt despite knowing that she was

represented by an attorney; that it sent her a collection letter that failed to identify the

correct name of the creditor; that it made a false statement of the creditor's name; and

that it attempted to collect a time-barred debt; all in violation of the Fair Debt Collection

Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq*.  Although Ms. Green initially filed

this lawsuit on behalf of herself and a putative class of plaintiffs, her request for class

certification was denied on September 26, 2014, and her request for reconsideration of

that decision was also denied in an order issued contemporaneously with this one.

This cause is now before the Court on the parties' cross motions for summary

judgment [Docket Nos. 124 and 127, respectively], both filed on October 10, 2014.  For

1

the reasons detailed below, these motions are <u>GRANTED IN PART</u> and <u>DENIED IN PART</u>.

**Factual Background**

At some point prior to 2006, Ms. Green opened a credit card account with Bank One. Ms. Green was subsequently unable to make monthly minimum payments on the Bank One account balance and collection was eventually turned over to a collection agency.

The Bank One account was referred for collection to the Law Office of Sam Streeter, PLLC ("Streeter"), who was later sued by Ms. Green for alleged FDCPA violations, through her attorney, Steven J. Halbert. Ms. Green settled her lawsuit against Streeter in 2006; that settlement did not affect the merits of the underlying Bank One debt, and Ms. Green understood that following that settlement she was still required to repay the underlying debt. Following the settlement with Streeter, however, Ms. Green did not make any payments toward the outstanding balance of the Bank One debt.

In 2010, Interim Capital Group, Inc. ("Interim") purchased a portfolio of debts that included Ms. Green's Bank One credit card debt. As a result of that purchase, Interim was provided certain background information relating to Ms. Green's account as well as contact information for Attorney Halbert. That information, which included Attorney Halbert's email address and telephone number, was uploaded into Interim's collection management system. Interim subsequently transferred a number of accounts, including

Ms. Green's, to DHC Consulting Services, LLC ("DHC").[1]  When it transferred Ms. Green's account to DHC, Interim did not include any information relating to Attorney Halbert or provide notice to DHC that Attorney Halbert had represented Ms. Green in the prior litigation.

       In early February 2013, DHC electronically transmitted a spreadsheet of approximately 2,500 accounts, including Ms. Green's Bank One account, to Defendant Monarch for collection.[2]  The accounts listed on the spreadsheet were not all owned by DHC; rather some were owned by DHC, while others, like Ms. Green's, were owned by Interim; the remaining accounts were owned by various other debt buyers.  Monarch received this spreadsheet of accounts (or "placement") from DHC on February 7, 2013 and began the process of loading the spreadsheet into its system.  The person responsible for that transfer of data was Monarch's Chief Administrative Officer, Diane Mazzacano.  Ms. Mazzacano had loaded DHC placements on at least two prior occasions in June 2011 (approximately eighteen months earlier), including DHC's very first placement with Monarch after which she crafted "DHC Loading Placement" instructions for future use by Monarch's data processing department for subsequent placements.  According to Ms. Mazzacano, prior to loading the February 7, 2013 DHC placement at issue in this litigation, she reviewed the loading placement instructions she herself had previously drafted.

---

[1] DHC is in the business of taking smaller debt buyers' portfolios, aggregating them, and sending them out to debt collectors.

[2] Monarch is licensed as a debt collection agency in the State of Indiana.

Despite her prior experience and review of the loading instructions, Ms. Mazzacano failed to perform at least two steps of the process[3] when loading the February 7 DHC placement, causing the creditor on all the accounts to be identified as "DHC Consulting Services, Inc.," when that information was not correct, at least it was not accurate for all accounts.[4]  More specifically, Ms. Mazzacano did not correctly sort the DHC spreadsheet by the name of the account owner, which meant that separate text files were not created for the different creditor portfolios, ultimately leading to all of the imported accounts being assigned the same client number, "2502," which corresponded to "DHC Consulting Services, Inc."  As a result of this mistake, when Monarch provided that information to a third-party letter vendor for use in printing the collection letters, those collection letters identified the creditor for all of the accounts listed on the spreadsheet as "DHC Consulting Services, Inc."  In Ms. Green's case, this meant that the collection letter she received misidentified the creditor to whom her debt was owed as DHC, instead of Interim.

Ms. Mazzacano's work was not reviewed by any other Monarch employee before the placement information was sent to the third-party vendor to print the collection letters.  Monarch has an auditing procedure pursuant to which a random sampling of all of the collection letters sent by the company occurs approximately thirty days after the

---

[3] Ms. Green contends that Ms. Mazzacano missed a third step in the process, namely, that she forgot to "decode" the letters DHC, which represented the name of another debt buyer, Ascension Services.  It is irrelevant to our analysis whether Ms. Mazzacano missed two or three steps in the process as it is undisputed that at least two mistakes were made by her.
[4] The parties dispute whether DHC was the creditor on any of the accounts, but that dispute is not material to our determination in this case.

letters have been sent, at which point Monarch compares the generated letters against the information that was previously entered by the company into its system to ensure the data matches. However, because the error in this case occurred when Ms. Mazzacano initially inputted the information into the system, Monarch's auditing procedure did not, and would not have been able to identify the problem, even if the collection letter at issue in this litigation had been in the random sample.

Ms. Green received the collection letter dated February 8, 2013 from Monarch addressing the delinquent debt at issue in this litigation. The letter advised Ms. Green that she owed a total balance of $3,959.95 on the account and that the creditor was DHC. Monarch's notice stated that if Ms. Green chose not to pay the balance in full, "the creditor is willing to accept a settlement of 35% of the total balance due, which is *** $1385.98 *** as of the date of this letter." Pl.'s Exh. A. The letter further stated that DHC had transferred the account to Monarch for collection and instructed Ms. Green that, if she were to make a payment, she should make her check payable to "Monarch Recovery Management, Inc." The letter also contained Monarch's contact information and informed Ms. Green that she could write to Monarch to dispute the validity of the debt. Interim, the creditor to whom the debt was actually owed, was not mentioned anywhere in Monarch's February 8 letter.

On February 28, 2013, Monarch attempted to contact Ms. Green by telephone. Monarch instead spoke with Ms. Green's husband, who requested that Monarch call back after Ms. Green returned home from work. He also apparently relayed to Ms. Green the report that she had been contacted regarding a credit card debt. Ms. Green returned

Monarch's telephone call that same day and directed Monarch to cease contact with her and instead to direct its calls to her attorney, Mr. Halbert.  According to Ms. Green, Monarch's collector asked her whether she would be filing for bankruptcy before the collector agreed to contact Mr. Halbert regarding the debt.  After the telephone call concluded, Monarch never contacted Ms. Green again, nor did it sue her to collect on the debt at issue.

Ms. Green filed her original complaint in this action on March 13, 2013 and amended her complaint on May 23, 2013, alleging on behalf of herself and a purported class that Monarch's collection letter violated the FDCPA by misidentifying and failing to name the proper creditor (Counts I and II) and attempting to collect a time-barred debt without a warning that the statute of limitations had expired (Count III).  Ms. Green also brought an individual FDCPA claim alleging that Monarch impermissibly contacted her when she was represented by an attorney (Count IV).  On September 26, 2014, we denied Ms. Green's motion for class certification and, in an order issued contemporaneously with this order, denied her motion to reconsider that decision.  Accordingly, we proceed now to address Ms. Green's individually framed claims.

The parties' cross motions for summary judgment, filed on October 10, 2014, are now fully briefed and ripe for ruling.

## Legal Analysis

### I.    Standard of Review

Summary judgment is appropriate when the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In deciding whether genuine issues of material fact exist, the court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in favor of the non-moving party.  See *id.* at 255. However, neither the mere existence of some alleged factual dispute between the parties, *id.* at 247, nor the existence of some metaphysical doubt as to the material facts, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), will defeat a motion for summary judgment.  *Michas v. Health Cost Controls of Illinois, Inc.*, 209 F.3d 687, 692 (7th Cir. 2000).

The moving party bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323. The party seeking summary judgment on a claim on which the non-moving party bears the burden of proof at trial may discharge its burden by showing an absence of evidence to support the non-moving party's case.  *Id.* at 325.

Summary judgment is not a substitute for a trial on the merits, nor is it a vehicle for resolving factual disputes.  *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th

7

Cir. 1994). Thus, after drawing all reasonable inferences from the facts in favor of the non-movant, if genuine doubts remain and a reasonable fact finder could find for the party opposing the motion, summary judgment is inappropriate. *See Shields Enter., Inc. v. First Chicago Corp.*, 975 F.2d 1290, 1294 (7th Cir. 1992); *Wolf v. City of Fitchburg*, 870 F.2d 1327, 1330 (7th Cir. 1989). But if it is clear that a plaintiff will be unable to satisfy the legal requirements necessary to establish her case, summary judgment is not only appropriate, but mandated. *See Celotex*, 477 U.S. at 322; *Ziliak v. AstraZeneca LP*, 324 F.3d 518, 520 (7th Cir. 2003). Further, a failure to prove one essential element necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 323.

Courts often confront cross motions for summary judgment because Rules 56(a) and (b) of the Federal Rules of Civil Procedure allow both plaintiffs and defendants to move for such relief. In such situations, courts must consider each party's motion individually to determine if that party has satisfied the summary judgment standard. *Kohl v. Ass'n of Trial Lawyers of Am.*, 183 F.R.D. 475 (D.Md.1998). Thus, in determining whether genuine and material factual disputes exist in this case, the Court has considered the parties' respective memoranda and the exhibits attached thereto, and has construed all facts and drawn all reasonable inferences therefrom in the light most favorable to the respective non movant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).

## II.   Discussion

Both parties have moved for summary judgment on each of Ms. Green's claims brought pursuant to the FDCPA.  We address their arguments in turn below.

The FDCPA aims at remedying the use of "abusive, deceptive, and unfair debt collection practices." 15 U.S.C. § 1692(a).  Among other things, the statute forbids debt collectors from making "false, deceptive, or misleading representation[s]." 15 U.S.C. § 1692e. In determining whether the contents of a debt collector's communication with a debtor are "false or misleading," the Seventh Circuit has directed district courts to view them from the point of view of an "unsophisticated consumer"—one who is "uninformed, naive, or trusting," albeit not a "dimwit." *Wahl v. Midland Credit Mgmt. Inc.,* 556 F.3d 643, 645 (7th Cir. 2009) ("The 'unsophisticated consumer' isn't a dimwit. She may be 'uninformed, naive, [and] trusting,' but she has 'rudimentary knowledge about the financial world.'") (further citations omitted). A plaintiff cannot successfully plead a violation of the statute, however, simply by pointing to some formal, but immaterial mistake in the debt collector's form of communication. "A statement cannot mislead unless it is material, so a false but non-material statement is not actionable." *Hahn v. Triumph P'ships LLC,* 557 F.3d 755, 758 (7th Cir. 2009) (citing *Wahl,* 556 F.3d at 646).

How a particular notice affects its intended audience "is a question of fact." *See Walker v. Nat'l Recovery, Inc.*, 200 F.3d 500, 501 (7th Cir. 1999); *Headen v. Asset Acceptance, LLC*, 383 F. Supp. 2d 1097, 1102 (S.D. Ind. 2005). Where the text of a dunning letter is not unambiguously "confusing" on its face, a plaintiff will need to proffer additional evidence supplementing her own say-so—such as survey data—in

order to survive summary judgment on her FDCPA claim. *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 415 (7th Cir. 2005).

### A.    Misidentification of Creditor in Violation of 15 U.S.C. § 1692g(a)(2) and § 1692e

Section 1692g(a) of the FDCPA requires that a debt collector, within five days of its first communication with a consumer, provide the consumer with a written notice containing, among other information, "the name of the creditor to whom the debt is owed." 15 U.S.C. § 1692g(a)(2). As noted above, the FDCPA also prohibits debt collectors generally from using any false, deceptive or misleading representation or means in connection with the collection of a debt. *See* 15 U.S.C. § 1692e. It is undisputed that, here, the collection letter Monarch sent to Ms. Green misidentified the creditor as DHC. The actual creditor, Interim, was never mentioned in the letter. Accordingly, Ms. Green claims that Monarch violated § 1692g(a)(2) and § 1692e of the FDCPA by failing to correctly state the name of the creditor to whom the debt was owed and by falsely stating the name of the creditor.

It is clear that Monarch failed to correctly identify the creditor to whom Ms. Green owed the requested payment and thus that the collection letter contained a false statement. But under Seventh Circuit law, a false statement does not automatically violate the FDCPA; rather, "an FDCPA plaintiff bears the burden of proving that even a false statement would mislead or deceive the unsophisticated consumer." *Ruth v. Triumph P'ships*, 577 F.3d 790, 800 (7th Cir. 2009). Monarch argues that Ms. Green

10

cannot meet that burden because she has failed to introduce any extrinsic evidence establishing that the misidentification of the creditor in its collection letter would be confusing to the unsophisticated consumer.

It is true that in cases involving statements that are not plainly misleading or deceptive but that have the potential to mislead or deceive the unsophisticated consumer, "plaintiffs may prevail only by producing extrinsic evidence, such as consumer surveys, to prove that unsophisticated consumers do in fact find the challenged statements misleading or deceptive." *Id.* (citations omitted). However, in some circumstances, "a debt collector's letter may be so clearly confusing on its face that a court may award summary judgment to the plaintiff on that basis." *McKinney v. Cadleway Props., Inc.*, 548 F.3d 496, 503 (7th Cir. 2008) (citing *Durkin*, 406 F.3d at 415); *accord Bode v. Encore Receivable Mgmt., Inc.*, No. 05-CV-1013, 2007 WL 2493898, at *4 (E.D. Wis. Aug. 30, 2007) ("The FDCPA can create liability for a statement naming the creditor which on its face violates the Act because it is plainly confusing, even in the absence of extrinsic evidence. … Accordingly, the failure to name the correct creditor could create liability because the collection letter could be so obviously false, deceptive, confusing, or misleading that extrinsic evidence is unnecessary to prove a violation.") (citing *Chuway v. Nat'l Action Fin. Servs.*, 362 F.3d 944, 948 (7th Cir. 2004)).

We are persuaded that this is a case in which the collection letter was obviously false and misleading such that extrinsic evidence is not necessary to prove an FDCPA violation. This is not a situation in which the collection letter used a technically false, but

11

close approximation of the correct creditor's name.  Rather, Monarch's collection letter listed an entity that had absolutely no connection to the actual creditor and was thus flatly wrong.  There can be no question that the unsophisticated consumer would find this misleading and deceptive.  No reasonable jury could find otherwise.  Moreover, as other courts have recognized, the identity of the creditor is material information to a consumer.  *See Walls v. United Collection Bureau, Inc.*, No. 11 C 6026, 2012 WL 1755751, at *2 (N.D. Ill. May 16, 2012) (rejecting the contention that misidentification of the creditor is "immaterial information" because "it could cause an unsophisticated consumer to be concerned about the possibility of being defrauded or about paying the incorrect creditor and continuing to have outstanding debt").  Because the collection letter sent by Monarch containing the wrong name of the creditor was clearly false, confusing, and misleading, Ms. Green is not required to present extrinsic evidence to establish what is already plainly obvious on its face.[5]

    This conclusion does not complete our analysis, however, as Monarch has asserted a bona fide error defense.  A debt collector like Monarch may not be held liable under the FDCPA if it can show "by a preponderance of the evidence that the violation was not

---

[5] Monarch argues that Ms. Green testified that despite the fact that the collection letter misidentified the creditor, she knew that the letter was referring to the debt originally owed to Bank One.  Given this testimony and the fact that the misidentification of the creditor did not cause Ms. Green to take any action that she otherwise would not have taken, Monarch contends that she cannot, as a matter of law, establish that the letter was misleading and deceptive or that the information was material.  While we do not necessarily agree with Monarch's characterization of Ms. Green's testimony, even if accurate, whether Ms. Green was confused is not relevant to our determination as "[t]he Court must consider the letter from the vantage point of the unsophisticated consumer – not necessarily [Ms. Green]."  *Hale v. AFNI, Inc.*, No. 08 CV 3918, 2010 WL 380906, at *7 (N.D. Ill. Jan. 26, 2010) (citing *Wahl*, 556 F.3d at 645-46).

intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid such error." 15 U.S.C. § 1692k(c). In order to negate liability under the FDCPA in this manner, a defendant must show by a preponderance of the evidence that (1) "the presumed FDCPA violation was not intentional"; (2) "the presumed FDCPA violation resulted from a bona fide error"; and (3) "it maintained procedures reasonably adapted to avoid any such error." *Kort v. Diversified Collection Servs., Inc.*, 394 F.3d 530, 537 (7th Cir. 2005). An error is "bona fide" if it was "an error made in good faith; a genuine mistake, as opposed to a contrived mistake." *Id.* at 538.

Ms. Green largely focuses on the third element of the defense, arguing that Monarch failed to maintain procedures that were "reasonably adapted" to avoid misidentifying or failing to provide the name of the creditor in its collection letters. It is undisputed that Monarch did have in place procedures to avoid the types of mistakes at issue here in the form of its written computer loading instructions. Monarch argues that those instructions accurately describe the steps necessary to properly input the spreadsheet data into the system, and thus, when followed correctly, prevent misidentification of the creditor. Monarch maintains that the written loading instructions therefore satisfy the third element of the bona fide error defense because, while not infallible, they are "reasonably adapted" to avoid misidentifying the creditor. *See Dimovski v. Tolisano & Danforth, L.L.C.*, No. 3:10-CV-205 (JCH), 2011 WL 1638051, at

13

*6 (D. Conn. Apr. 29, 2011) ("[A] debt collector need not show that its procedures are 'fool proof' to be entitled to the bona fide error defense.").

However, as Ms. Green argues, Monarch's procedures lack adequate auditing measures that are designed to verify that the loading procedures were properly followed and that the account information was correctly loaded *before* the information is sent to the printer to produce the collection notices.  Monarch concedes that no other employee checks the work of the individual inputting the information to ensure accuracy nor are there any other procedures in place that are designed to catch human loading errors.  Ms. Green contends that this failure establishes as a matter of law that Monarch's procedures were not "reasonably adapted" to avoid the errors at issue here.  *See Engelen v. Erin Capital Mgmt, LLC*, 544 Fed. App'x 707, 709 (9th Cir. 2013) (holding as a matter of law that the defendant's procedures which included legal compliance training, written instructions on how to perform the task, and periodic spot-checking of the bookkeeper's work did not entitle it to the bona fide error defense because those procedures were not equipped to catch "human recording errors").

Our review convinces us that neither party is entitled to summary judgment on this issue.  On one hand, a reasonable jury could find that Monarch's loading instructions constitute a reasonable, albeit fallible, procedure sufficient to satisfy the bona fide error defense.  On the other hand, a reasonable jury could find that Monarch's failure to maintain a process or system of redundancies designed to confirm that data has been inputted correctly and in accordance with the loading procedures does not entitle it to the

14

defense.  Accordingly, this is an issue that cannot be decided at summary judgment and must go to a jury.

### B.  Attempt to Collect a Time-Barred Debt in Violation of 15 U.S.C. § 1692e

Ms. Green claims that Monarch's collection letter also violated 15 U.S.C. § 1692e[6] by attempting to collect a time-barred debt.  Section 1692e(2)(A) provides that it is a violation of the FDCPA to falsely represent "the character, amount, or legal status of any debt."  *Id.*  Under Seventh Circuit law, "[w]hether a debt is legally enforceable is a central fact about the character and legal status of that debt."  *McMahon v. LVNV Funding, LLC*, 744 F.3d 1010, 1020 (7th Cir. 2014).  The parties do not dispute that, pursuant to Indiana Code § 34-11-2-7(1), the statute of limitations in Indiana for collecting delinquent credit card debts is six years from the date of the last activity.  *See Smither v. Asset Acceptance, LLC*, 919 N.E.2d 1153, 1158 (Ind. Ct. App. 2010) (holding that the six-year statute of limitations governing "[a]ctions on accounts and contracts not in writing" set forth in Ind. Code § 34-11-2-7(1) applies to attempts to collect credit card debt).  It is also undisputed that Ms. Green's debt was in default as of May 2005, nearly

---

[6] In her Amended Complaint, Ms. Green alleged that Monarch's attempt to collect a time-barred debt violated 15 U.S.C. § 1692e(5), which provides that it is a violation of the FDCPA to threaten "to take any action that cannot legally be taken or that is not intended to be taken."  Ms. Green more generally alleged that by attempting to collect on a time-barred debt without warning her that the debt was beyond the statute of limitations, Monarch's letter was "otherwise deceptive or misleading, in violation of § 1692e of the FDCPA."  Am. Compl. ¶ 29.  Because Monarch's collection notice did not threaten litigation against Ms. Green, but rather merely failed to mention the applicable statute of limitations and the fact that her debt was time-barred, we believe her claim is properly analyzed under § 1692e(2), which prohibits the false representation of the character or legal status of any debt.  The applicable analysis is the same under both provisions.

nine years before Monarch sent the collection letter at issue in this litigation. Accordingly, Ms. Green argues that Monarch's collection letter was deceptive or misleading in violation of the FDCPA.

In *McMahon v. LVNV Funding, LLC*, the Seventh Circuit recently held that it is not "automatically improper for a debt collector to seek re-payment of time-barred debts," but "if the debt collector uses language in its dunning letter that would mislead an unsophisticated consumer into believing that the debt is legally enforceable, regardless of whether the letter actually threatens litigation, … the collector has violated the FDCPA." 744 F.3d at 1020. *McMahon* involved consolidated appeals that challenged letters seeking to collect time-barred debts, both of which contained offers to settle the debts. *Id.* at 1012-13. The *McMahon* Court observed that the defendants' collection letters, both which contained the term "settle" or "settlement" were especially problematic "since a gullible customer who made a partial payment would inadvertently have reset the limitations period and made herself vulnerable to a suit on the full amount. That is why those offers only reinforced the misleading impression that the debt was legally enforceable." *Id.* at 1021.

Similar to the dunning letter at issue in *McMahon*, the collection notice sent by Monarch contained a settlement offer. Specifically, Monarch's collection letter provided in relevant part: "If you choose not to pay the balance in full, the creditor is willing to accept a settlement of 35% of the total balance due…." Pl.'s Exh. A. Further, Monarch's letter contained no mention of the statute of limitations; nor did it advise Ms. Green that

16

her debt was subject to a limitations defense under Indiana law or that a partial payment would re-start the limitations period.

Monarch argues that it is entitled to summary judgment because Ms. Green failed to present extrinsic evidence to support her claim that Monarch's letter would mislead an unsophisticated consumer into believing the debt it was attempting to collect was legally enforceable.  It is true, as Monarch argues, that the *McMahon* Court did not hold that a collection letter like Monarch's that is silent regarding the statute of limitations and the effect of a partial payment on a time-barred debt is *per se* misleading.  However, that question was not before the court as both of the consolidated appeals at issue in *McMahon* were still at the pleadings stage.  Accordingly, we must determine whether the collection letter Monarch sent to Ms. Green is so clearly misleading that extrinsic evidence to prove a violation is unnecessary or whether the communication instead involves "statements that are not plainly misleading or deceptive but might possibly mislead or deceive the unsophisticated consumer."  *Ruth*, 577 F.3d at 800.  If it is the latter, then Ms. Green must support her claim by "extrinsic evidence, such as consumer surveys, to prove that unsophisticated consumers do in fact find the challenged statements misleading or deceptive."  *Id.*

Again, upon careful review of the collection notice at issue in this case, we find that extrinsic evidence is not required to establish that Monarch's letter would mislead an unsophisticated consumer.  While the Seventh Circuit has not had occasion to address this issue since *McMahon*, in two recent cases post-dating *McMahon*, the District Court

17

for the Northern District of Illinois has held that collection letters which did not inform the consumer that the debt was time-barred or of the effect of making a partial payment on a time-barred debt were plainly misleading on their face.  *See Slick v. Portfolio Recovery Associates, LLC*, ___ F. Supp. 3d ___, 2015 WL 3982632 (N.D. Ill. June 30, 2015); *Pantoja v. Portfolio Recovery Associates, LLC*, ___ F. Supp. 3d ___, 2015 WL 848568 (N.D. Ill. Jan. 14, 2015).

In *Pantoja*, the defendant's letter stated that "[b]ecause of the age of your debt, we will not sue you for it and we will not report it to any credit reporting agency."  *Pantoja*, 2015 WL 848568, at *2.  The court held that this language was plainly misleading "because it does not tell the consumer that the debt is time-barred and defendant cannot sue plaintiff to collect it, rather it implies that defendant has chosen not to sue.  Nor does it tell plaintiff that the effect of making (or agreeing to make) a partial payment on a time-barred debt is to revive the statute of limitations for enforcing that debt."  *Id.*  The court thus concluded that "[u]pon receipt of the letter the only reasonable conclusion that an unsophisticated consumer (or any consumer) could read is that defendant was seeking to collect on a legally enforceable debt, even if defendant indicated that it chose not to sue."  *Id.* at *3.

Unlike the collection letter at issue in *Pantoja*, Monarch's collection notice failed to mention in any way the subject of a limitations period.  As recognized by the Court in *Slick*, "a letter that is completely silent on the subject is even more misleading."  2015 WL 3982632, at *4; *see also McMahon*, 744 F.3d at 1021 (recognizing that "[n]either

18

[defendant] gave a hint that the debts they were trying to collect were vulnerable to an ironclad limitations defense").  Relying on the fact that the defendant's collection letter did not address the statute of limitations, coupled with the defendant's use in subsequent communications of the words "settle" and "settlement" with respect to payments on the debt, the *Slick* Court held that the defendant's communications with the plaintiff were plainly misleading.  2015 WL 3982632 at *4-*5.

Thus, in similar fashion to the *Slick* decision, we hold that Monarch's collection letter was plainly misleading in offering to accept a "settlement" on a time-barred debt while failing to inform Ms. Green that a limitations defense existed and/or that the effect of a partial payment would be to restart the statute of limitations.  Nothing in Monarch's letter indicates that the debt was not legally enforceable and, in fact, by offering to settle the debt, the letter clearly implied otherwise.  As recognized by the Seventh Circuit in *McMahon*, both the Federal Trade Commission and the Consumer Protection Bureau have found "that most consumers do not understand their legal rights with respect to time-barred debts."[7]  744 F.3d at 1021.  Given these facts, we conclude that Monarch's collection letter offering to settle a time-barred debt was plainly misleading, and thus,

---

[7] In *McMahon*, the Seventh Circuit declined to declare the attempt to seek repayment of a time-barred debt "automatically improper," reasoning that "some people might consider full debt repayment a moral obligation, even though the debt has been extinguished."  744 F.3d at 1020.  But we agree with the district court's analysis in *Slick* that it is "far-fetched to suppose that unsophisticated consumers assume that debt-collection agencies asking for payment are really just appealing to the consumers' sense of moral duty."  2015 WL 3982632, at *4.

that no extrinsic evidence was necessary to prove a violation of the FDCPA.

Accordingly, Ms. Green is entitled to summary judgment on this claim.[8]

### C.    Contacting Debtor Represented by Counsel in Violation of 15 U.S.C. § 1692c(a)(2)

Under § 1692c(a)(2), a debt collector may not communicate with a consumer

without the consumer's permission "if the debt collector knows the consumer is

represented by an attorney with respect to such debt and has knowledge of, or can readily

ascertain, such attorney's name and address." 15 U.S.C. § 1692c(a)(2).  It is undisputed

that, while Ms. Green was represented by counsel, Monarch sent the February 8, 2013

collection letter to her and also attempted to contact her at home via telephone on

February 28, 2013, both of which constitute "communications" under the FDCPA.  Once

Ms. Green returned Monarch's telephone call on February 28, 2013 and informed it that

she had representation, Monarch made no further attempts to communicate with her.

Ms. Green maintains that Monarch sent the collection letter to her home and called

her home telephone number when it knew or should have known that she was represented

by counsel in connection with the Bank One debt, and thus, she is entitled to summary

judgment on her claim brought pursuant to § 1692c.  In support of this argument, Ms.

Green points to the fact that Interim, the creditor who owned her debt at the time

Monarch sent its collection letter, knew that she was represented by counsel and included

---

[8] Monarch did not argue in its briefing that the bona fide error defense applies to this claim.

the name and contact information for her attorney in its collection notes.  In addition, Ms.

Green contends that, because her prior lawsuit involving the Streeter Law Firm's actions

in connection with its attempts to collect the Bank One debt was a matter of public

record, Monarch should have been aware that she was represented by counsel in

connection with the debt.

Monarch rejoins that, while it is clear that *Interim* knew that Ms. Green was

represented by an attorney with respect to the debt at issue in this litigation and was in

possession of the attorney's contact information, the record is devoid of any evidence that

*Monarch* had such knowledge.  Because knowledge is an element of a § 1692c claim,

Monarch maintains that summary judgment should be entered in its favor.

It is well-established that "liability under § 1692c turns on actual knowledge."

*Thomas v. Boscia*, No. 1:08-cv-42-WTL-TAB, 2009 WL 2778105, at *5 (S.D. Ind. Aug.

28, 2009) (citing *Randolph v. IMBS, Inc.*, 368 F.3d 726, 729-30 (7th Cir. 2004)).  Here, it

is clear that Interim had actual knowledge that Ms. Green was represented by counsel in

connection with the Bank One debt.  But, as Defendant argues, there is no evidence on

the record before us of Monarch having actual knowledge that Ms. Green was

represented, either when it sent her a collection letter on February 8, 2013, or when it

attempted to contact her by telephone on February 28, 2013.  Rather, the evidence before

us establishes that when Interim transferred Ms. Green's account to DHC, Interim did not

provide DHC the contact information for Ms. Green's attorney nor did it inform DHC

that Ms. Green was represented in connection with the Bank One debt.  Such information

therefore was not provided to Monarch when DHC in turn sold Ms. Green's debt to

Defendant.  Contrary to Ms. Green's argument, knowledge possessed by one entity

cannot be imputed to a separate entity for purposes of § 1692c(a)(2) liability.  *See, e.g.*,

*Randolph*, 368 F.3d at 729 (declining to impute knowledge of one party (the creditor) to a

separate party (debt collector) under § 1692c(a)(2)); *Keisler v. Encore Receivable Mgmt.,*

*Inc.*, No. 1:06-cv-0912-LJM-WTL, 2008 WL 1774173, at *5 (S.D. Ind. Apr. 17, 2008)

("With respect to [the plaintiff's] claim under § 1692c(a)(2), the Court agrees with [the

defendant] that *Randolph* defeats [the plaintiff's] claim because knowledge in the hands

of [a creditor] is not knowledge in the hands of [the debt collector].").

Ms. Green asserts that Monarch nonetheless should have known that she was

represented by counsel based on the fact that her prior lawsuit against the Streeter Law

Firm concerning prior attempts to collect the debt at issue in this litigation was a matter

of public record.  However, as Monarch points out, Ms. Green has not cited, nor have we

uncovered any authority holding that a debt collector has an affirmative duty to search

public records to determine whether a consumer at any point may have been represented

by counsel.  The mere fact that such information may have been available in a public

court file is clearly insufficient to establish that Monarch had actual knowledge that Ms.

Green was represented by counsel in connection with the debt at issue at the time in

contacted her in February 2013.  Accordingly, Ms. Green's claim brought pursuant to §

1692c(a)(2) cannot survive summary judgment.

**D.    Damages**

22

Pursuant to 15 U.S.C. § 1692k, Ms. Green is seeking actual damages in addition to statutory damages in this lawsuit.  Specifically, she seeks damages for emotional distress she alleges she suffered in connection with Monarch's conduct.  Monarch argues that Ms. Green has failed to present admissible evidence to support her claim that she suffered any actual damages flowing from any FDCPA violation at issue in this litigation, and thus, as a matter of law, that she is barred from seeking such damages.[9]

The only evidence Ms. Green has presented in support of her claim of emotional damages is her own testimony.  She has not designated an expert to testify nor has she introduced any medical records in support of her testimony.  In such a case, a plaintiff "must explain the circumstances of [her] injury in reasonable detail" unless the "facts underlying the case are so inherently degrading that it would be reasonable to infer that a person would suffer emotional distress from the defendant's action."  *Denius v. Dunlap*, 330 F.3d 919, 929 (7th Cir. 2003) (citations omitted).  Because we are not persuaded that the facts presented here are so extreme and inherently degrading that we can assume Ms.

---

[9] Monarch contends that we should reconsider the prior decision in this matter denying its motion to dismiss for lack of subject matter jurisdiction in light of its prior Rule 68 offer of judgment in the amount of $1500 ($1000 for statutory damages and $500 in actual damages).  In that order, Magistrate Judge Dinsmore denied Monarch's motion, reasoning that Monarch had not offered all that Ms. Green had demanded and that it was possible that her actual damages could exceed the $500 amount offered by Monarch.  Monarch argues that because the evidence now shows that Ms. Green cannot establish she suffered any actual damages, we should reconsider the Magistrate Judge's order.  However, the Seventh Circuit recently addressed this issue in *Smith v. Greystone Alliance*, 772 F.3d 448 (7th Cir. Nov. 13, 2014), holding that a defendant may not make an offer for less than demanded by the plaintiff, have part of the merits decided, and then request that the suit be dismissed for lack of jurisdiction because a larger settlement offer had previously been made.  *Id.* at 449-51; *see also Gates v. Towery*, 430 F.3d 429 (7th Cir. 2005) (holding that jurisdictional dismissal is proper only if the defendant offers more than the plaintiff's demand).  Accordingly, there is no basis for Monarch's request for reconsideration.

Green suffered emotional distress, we must look to her testimony to determine whether she has presented more than merely her own conclusory statements to support her damages claim.

When asked at her deposition what damages or injury she sustained as a result of the letter and telephone call she received from Monarch, Ms. Green testified that she suffered from "[f]atigue, ulcer flare-up, my husband's irritability, my irritability" and "worrying about bills."  Green Dep. at 72.  Ms. Green further testified that Monarch's actions caused fatigue because it "brought up old memories of [dealings with the Streeter law firm in relation to the debt], the nervousness, the anxiety."  *Id.* at 72-73.

When asked specifically about the effect of Monarch's collection letter, Ms. Green testified that she had been diagnosed with ulcers approximately three or four years before being contacted by Monarch and that receiving Monarch's letter caused a "bad" flare-up of the ulcer.  *Id.* at 73-75.  According to Ms. Green's testimony, her ulcer flare-ups are "hard to explain," but that the one she experienced after receiving Monarch's collection letter made her "stomach feel like it's just churning," although it did not cause her to "get that doubled over."  *Id.* at 75.  Ms. Green testified that she did not seek any treatment from a medical professional after experiencing these symptoms in relation to her receipt of the collection letter from Monarch nor has she seen a physician or other medical professional for treatment of that condition since that date.  *Id.* at 74.  Ms. Green does not take any prescription or over-the-counter medication to treat her ulcers.  *Id.*

Ms. Green also testified that receipt of the letter caused her to be "short-tempered" and "short with [her] husband." *Id.* at 76. Specifically, Ms. Green testified that, at the time she received the letter, she and her husband got into an argument and her husband expressed his belief that she "needed to handle it better, be better at handling bills." *Id.* at 77. According to Ms. Green, her and her husband's irritability over the letter lasted approximately one day, but she testified that she was worried and anxious as a direct result of the collection letter "[e]very day" since she received it. *Id.* at 78.

Ms. Green's testimony that she suffered fatigue, argued with her husband, and experienced stomach pain following the receipt of Monarch's collection letter, goes beyond mere conclusory statements, though barely. She has described her alleged injury with sufficient detail to be entitled to present her evidence of emotional distress to a jury. Since Ms. Green has not designated an expert or submitted any medical records in support of her contention that she suffers from ulcers and that receipt of the collection letter caused an ulcer flare-up, she may not testify as to a specific medical diagnosis or attribute her physical discomfort to an "ulcer flare-up" as such a condition requires expert testimony to establish causation. Her testimony will be limited to her role as a layperson who experienced stomach pain, fatigue, and irritability following receipt of the collection letter. Monarch will then be free to cross-examine Ms. Green as it sees fit, including as to her failure to seek medical attention for such discomfort.

## III.   Conclusion

For the reasons detailed above, Plaintiff's Motion for Summary Judgment is GRANTED IN PART – and Defendant's Cross Motion for Summary Judgment is correspondingly DENIED IN PART – as to liability on Plaintiff's FDCPA claim based on Defendant's attempt to collect on a time-barred debt.  Plaintiff's Motion is DENIED IN PART – and Defendant's Cross Motion for Summary Judgment is correspondingly GRANTED IN PART – as to her FDCPA claim based on Defendant's attempt to contact her while she was represented by an attorney.  Both parties' motions are DENIED as to Plaintiff's FDCPA claims based on Defendant's misidentification of the creditor.

Therefore, the claims and issues remaining for trial are as follows: (1) a determination of whether Defendant is entitled to the bona fide error defense on Plaintiff's FDCPA claims based on Defendant's misidentification of the creditor, and, if not, the amount of actual and statutory damages to which Plaintiff is entitled on those claims; and (2) a determination of the amount of actual and statutory damages to which Plaintiff is entitled on her FDCPA claim based on Defendant's attempt to collect on a time-barred debt.  The case shall proceed accordingly.

IT IS SO ORDERED.

Date: _____07/29/2015_____

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

26

Distribution:

Steven James Halbert
shalbertlaw@aol.com

Paul  Gamboa
GORDON & REES LLP
pgamboa@gordonrees.com

Craig J. Mariam
GORDON & REES, LLP
cmariam@gordonrees.com

Ryan T. Brown
GORDON & REES, LLP
rtbrown@gordonrees.com

Angie K. Robertson
PHILIPPS AND PHLIPPS, LTD.
angiekrobertson@aol.com

David J. Philipps
PHILIPPS AND PHLIPPS, LTD.
davephilipps@aol.com

Mary E. Philipps
PHILIPPS AND PHLIPPS, LTD.
mephilipps@aol.com